# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KERRON RICHARDSON,

                Plaintiff,

v.

UNITED WHOLESALE MORTGAGE,

                Defendant.

Case No.                    cv

Honorable

---

Keith D. Flynn (P74192)
Ryan A. Paree (P80345)
Attorneys for Plaintiff
Miller Cohen, PLC
7700 2nd Ave., Suite 335
Detroit, Michigan 48202
(313) 964-4454
kflynn@millercohen.com
rparee@millercohen.com

_____/

There is no other pending or resolved
civil action arising out of the same transaction
or occurrence as alleged in the complaint.

    */s/Ryan A. Paree*

## **COMPLAINT AND DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, Kerron Richardson, by and through his attorneys, Miller Cohen, PLC, and for his complaint against United Wholesale Mortgage, states as follows:

## **INTRODUCTION**

Plaintiff, Kerron Richardson, is an African American man who was hired by Defendant, United Wholesale Mortgage ("United") in the fall of 2021 as an "operations representative." Plaintiff had several years of relevant mortgage experience when he was hired. Defendant was aware of this experience, because Plaintiff had discussed it in his job interview. Plaintiff was told that incoming representatives needed to wait at least nine months before they could apply for promotions.

Plaintiff was hired in with a cohort of roughly 30 people in the same position, all of whom started and trained at the same time. After two months of work, a much younger Chaldean operations representative who started with Plaintiff by the name of Jordan Najjar was promoted, despite Mr. Najjar having nowhere near Plaintiff's experience.

Plaintiff and another employee, a white woman named Alex Oconly, complained together about Mr. Najjar's promotion. They both claimed that they felt Mr. Najjar was being given preferential treatment based on his race. In response, Defendant permitted Ms. Oconly to apply for a promotion, but not Plaintiff. Ms. Oconly was given the position, while Plaintiff was informed that he must wait the full nine months.

Plaintiff's first opportunity for promotion was not until February of 2023. Plaintiff had been working with management for months to ensure that his performance was satisfactory and he had taken on additional projects in anticipation of the opportunity. Despite being extremely qualified—both based on his previous mortgage experience and his work at United—and having the support of his supervisor, the position was given to a white man with significantly less experience.

Plaintiff applied for other promotions and was never approved. None of the people who got the jobs he applied for were African American men. In March of 2023, Plaintiff received a new manager, who was less supportive than his previous manager. On March 20, 2023, Plaintiff emailed a career coach at United by the name of Allan Roltsch. In this email, he was explicit about his perception that the promotion selection process was racially discriminatory. The email was forwarded to Mr. Roltsch's supervisor, Brieana Segobiano. Plaintiff met with Ms. Segobiano, but the conversation was not productive. On April 3, 2023, Plaintiff sent an email to Ms. Segobiano that ended with, "Can you find out more about this? I truly believe I was discriminated against, especially if I am correct with who received the position." He was fired less than 24 hours later.

The same day, April 3, Plaintiff's supervisor sent him an email informing him that he was 56 hours (or 7 8-hour days) negative, and that if he missed any more work, for any reason at all, he would be fired. Plaintiff had missed seven days of

3

work in March because he was sick with COVID-19. The email on April 3 was the first time that Plaintiff had ever been disciplined or written up for attendance. After receiving the email, Plaintiff went to his supervisor and stated that he believed the supervisor did this in retaliation for his complaints of discrimination. The next day, Plaintiff's son had a medical emergency, and so Plaintiff called off work. Defendant fired Plaintiff that day. Defendant told Plaintiff that the reason he was terminated was that he had taken too much time off.

## PARTIES

1. Plaintiff, Kerron Richardson, is a private citizen and is currently a resident in the City of Detroit, County of Wayne, and State of Michigan.

2. Defendant United Wholesale Mortgage ("United") is a wholesale mortgage lender located in City of Pontiac, County of Oakland, and State of Michigan.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over Plaintiff's claims arising under the Family Medical Leave Act 29 U.S.C. §2611 *et. seq.* and Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000 *et. seq.*

4. Under 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

5. This Court is the proper venue pursuant to 28 U.S.C. §1391 (b).

## **GENERAL ALLEGATIONS**

6. Plaintiff began working for Defendant in 2021 as an Operations Representative.

7. At the time he was hired, Plaintiff had several years of relevant mortgage experience. This experience was listed on his resume and had been discussed in his job interview.

8. Upon information and belief, it is Defendant's usual practice to hire and onboard new employees in large groups.

9. Plaintiff was hired in with a cohort of approximately 30 people.

10. Defendant informed Plaintiff that Operations Representatives are ineligible for promotions until they have worked for United for at least nine months.

11. However, Jordan Najjar, who was hired at the same time as Mr. Richardson, was promoted after only two months.

12. Mr. Najjar is Chaldean, and upon information and belief, had no relevant experience in mortgages and was roughly 19 years old when he was promoted.

13. Mr. Richardson and another employee, a white woman named Alex Oconly, complained together about Mr. Najjar's promotion. They both stated that they believed Mr. Najjar was given preferential treatment based on his race.

14. Defendant permitted Ms. Oconly to apply for a promotion, which she received.

5

15. However, Mr. Richardson was not allowed to apply for a promotion until he had been working in his position for nine months.

16. During that time, Mr. Richardson worked with his supervisors to ensure his performance was satisfactory, he shadowed employees in desired positions, and he had taken on extra projects in anticipation of the opportunity for a promotion.

17. In February of 2023, Mr. Richardson applied for his first promotion, with the support of his immediate supervisor.

18. Despite his hard work, experience, and the backing of his supervisor, the position was given to a white co-worker with significantly less experience.

19. Over the following months, Mr. Richardson applied for several other promotions with the backing of his immediate manager, but he was never approved.

20. None of the people who got the positions he applied for were African American men.

21. In March of 2023, Plaintiff was assigned to a new supervisor, Joe Zimmer.

22. On March 20, 2023, Mr. Richardson emailed Allan Roltsch, a career coach at United. In that email, he complained that he believed the promotion selection process was racially discriminatory.

23. That email was forwarded to Mr. Roltsch's supervisor, Brieana Segobiano. Mr. Richardson and Ms. Segobiano emailed back and forth several times, and had an in-person meeting to discuss Mr. Richardson's complaints.

24. On April 3, 2023, Mr. Richardson sent an email to Ms. Segobiano regarding his most recent denial. In the email, he states, "I truly believe I was discriminated against, especially if I am correct with who received the position."

25. Later that same day, Mr. Zimmer sent him an email saying he was 56 hours (or seven full work days of eight hours) negative for time, and that if he missed any more work, regardless of the reason, he would be terminated.

26. Mr. Zimmer specifically stated that "we don't accept absent/unpaid time… we are unable to approve any further absent unpaid." [sic].

27. Mr. Richardson had never been written up or disciplined over any attendance issues prior to the threat of termination.

28. The previous month, Mr. Richardson had missed seven days of work because he was sick with Covid-19.

29. Mr. Richardson protested the threat of termination from his supervisor and stated that it was retaliation for his complaints of racial discrimination.

30. The next day, on April 4, 2023, Mr. Richardson's son had an urgent medical need which required his presence, and so Mr. Richardson had to call off work.

31. Defendant terminated Mr. Richardson that same day.

## COUNT I

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT-INTERFERENCE

32. Plaintiff incorporates by reference all preceding paragraphs.

7

33. Plaintiff was an 'eligible employee' as defined by the FMLA 29 U.S.C. §2611 (2)(a). Plaintiff worked for Defendant for more than 12 months; and Plaintiff worked in excess of 1,250 hours for the proceeding 12-month period at all relevant times.

34. Defendant is an "employer" as defined by the Family Medical Leave Act ("FMLA") 29 U.S.C. §2611 (4)(a) as an enterprise engaged in commerce…who employees 50 or more employees for each working day during each of 20 or more calendar work-weeks in the current or preceding year.

35. Plaintiff previously used FMLA: specifically, he used 7 days of FMLA while he was sick with COVID.

36. Mr. Richardson had come nowhere close to exhausting his 12 weeks of FMLA leave.

37. Defendant interfered with Plaintiff's right to take FMLA leave when it counted his protected FMLA leave as improper absences and told him that any further absences were prohibited and would lead to termination.

38. Plaintiff's leave to care for his son on April 4, 2023 constitutes legally protected FMLA leave.

39. In terminating Plaintiff for taking leave to care for his son, Defendant violated the FMLA.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A. Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, liquidated damages, and other damages;

B. Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D. Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT II

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT-RETALIATION

40. Plaintiff incorporates by reference all preceding paragraphs.

41. Plaintiff was an 'eligible employee' as defined by the FMLA 29 U.S.C. §2611 (2)(a). Plaintiff worked for Defendant for more than 12 months; and Plaintiff

worked in excess of 1,250 hours for the proceeding 12-month period at all relevant times.

42. Defendant is an "employer" as defined by the Family Medical Leave Act ("FMLA") 29 U.S.C. §2611 (4)(a) as an enterprise engaged in commerce…who employees 50 or more employees for each working day during each of 20 or more calendar work-weeks in the current or preceding year.

43. Plaintiff previously used FMLA: specifically, he used 7 days of FMLA while he was sick with COVID.

44. Mr. Richardson had come nowhere close to exhausting his 12 weeks of FMLA leave.

45. Defendant retaliated Mr. Richardson when it counted his protected FMLA leave as improper absences and told him that any further absences were prohibited and would lead to termination.

46. Plaintiff's leave to care for his son on April 4, 2023 constitutes legally protected FMLA leave.

47. In violation of the FMLA, Defendant terminated Mr. Richardson in retaliation for his use of legally protected FMLA leave.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A. Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic

damages, loss of employment opportunity, harm to reputation, loss of earning capacity, and other damages.

B. Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Granting Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D. Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT III

## VIOLATION OF TITLE VII – RACIAL DISCRIMINATION

48. Plaintiff incorporates by reference all preceding paragraphs.

49. Plaintiff was an employee of Defendant as defined by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e(f).

50. Defendant is an employer as defined by Title VII 42 U.S.C. §2000e(b).

51. Mr. Richardson is an African American man.

52. Defendant discriminated against Mr. Richardson by requiring him to wait nine months before he could apply for a promotion, while allowing non-African American employees to apply for promotions within a much shorter time period.

53. On multiple occasions, Defendant denied Plaintiff a position which he applied for and was qualified for, and gave the position to a person of a different race than Plaintiff, who was less qualified than Plaintiff.

54. Defendant's repeated refusal to promote Plaintiff when he was more qualified than the applicant who received the job constitutes racial discrimination under Title VII.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A. Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

B. Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.      Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.      Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT IV

## VIOLATION OF TITLE VII – RETALIATION

55.     Plaintiff incorporates by reference all preceding paragraphs.

56.     Plaintiff was an employee of Defendant as defined by Title VII, 42 U.S.C. § 2000e(f).

57.     Defendant is an employer as defined by Title VII 42 U.S.C. §2000e(b).

58.     Under Title VII, it shall be unlawful for an employer to discriminate against any of its employees for, inter alia, opposing "any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 20003-3(a).

59.     On several occasions, Mr. Richardson complained of racial discrimination in Defendant's hiring process.

60.     In retaliation for his legally protected activity, Defendant retaliated against Mr. Richardson by counting his legally protected FMLA leave as unpaid absences and terminating him for taking legally protected FMLA.

61. Defendant's proffered reason for terminating Mr. Richardson – which itself constitutes a violation of the FMLA – is nevertheless pretext to cover Defendant's unlawful retaliation against Mr. Richardson for opposing racial discrimination, in violation of Title VII.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

    A.    Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, exemplary and punitive, and other damages.

    B.    Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

    C.    Granting Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

    D.    Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT V

## VIOLATION OF MICHIGAN'S ELLIOT LARSEN CIVIL RIGHTS ACT (ELCRA) – RACIAL DISCRIMINATION

62. Plaintiff incorporates by reference all preceding paragraphs.

63. Plaintiff was an employee of Defendant as defined by Michigan's Elliott-Larsen Civil Rights Act ("Elliott-Larsen"), M.C.L. § 37.2201(a).

64. Plaintiff is an African-American man.

65. Defendant discriminated against Mr. Richardson by requiring him to wait nine months before he could apply for a promotion, while allowing non-African American employees to apply for promotions within a much shorter time period.

66. On multiple occasions, Defendant denied Plaintiff a position which he applied for and was qualified for, and gave the position to a person of a different race than Plaintiff, who was less qualified than Plaintiff.

67. Defendant's repeated refusal to promote Plaintiff when he was more qualified than the applicant who received the job constitutes racial discrimination under Elliot-Larsen §37.2202.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A. Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment,

pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

  B. Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

  C. Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

  D. Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT VI

## VIOLATION OF MICHIGAN'S ELLIOT LARSEN CIVIL RIGHTS ACT (ELCRA) – RETALIATION

  68. Plaintiff incorporates by reference all preceding paragraphs.

  69. Plaintiff was an employee of Defendant as defined by Elliott-Larsen, M.C.L. § 37.2201(a).

  70. On several occasions, Mr. Richardson complained of racial discrimination in Defendant's hiring process.

16

71. In retaliation for his legally protected activity, Defendant retaliated against Mr. Richardson by counting his legally protected FMLA leave as unpaid absences and terminating him for taking legally protected FMLA.

72. Defendant's proffered reason for terminating Mr. Richardson – which itself constitutes a violation of the FMLA – is nevertheless pretext to cover Defendant's unlawful retaliation against Mr. Richardson for opposing racial discrimination, in violation of Elliot-Larsen §37.2701.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A. Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, exemplary and punitive, and other damages.

B. Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Granting Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D.      Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

Respectfully submitted,

**MILLER COHEN PLC**

/s/ *Ryan A. Paree*
Ryan A. Paree (P80345)
Miller Cohen, PLC
*Attorneys for Plaintiff*
7700 Second Ave., Suite 335
Detroit, Michigan 48202
(313) 964-4454
rparee@millercohen.com

Dated: October 13, 2025

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KERRON RICHARDSON,

        Plaintiff,

v.

UNITED WHOLESALE MORTGAGE,

        Defendant.

Case No.                                                cv

Honorable

_____/

Keith D. Flynn (P74192)
Ryan A. Paree (P80345)
Attorneys for Plaintiff
Miller Cohen, PLC
7700 2nd Ave., Suite 335
Detroit, Michigan 48202
(313) 964-4454
kflynn@millercohen.com
rparee@millercohen.com
_____/

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff, **KERRON RICHARDSON,** by and through his attorneys, **MILLER COHEN, P.L.C.**, and hereby demands for a trial by jury, for all issues so triable.


[SIGNATURE NEXT PAGE]

19

                                       **MILLER COHEN PLC**

                                       /s/ *Ryan A. Paree*
                                       Ryan A. Paree (P80345)
                                       Miller Cohen, PLC
                                       *Attorneys for Plaintiff*
                                       7700 Second Ave., Suite 335
                                       Detroit, Michigan 48202
                                       (313) 964-4454
Dated: October 13, 2025             rparee@millercohen.com